IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL KULAKOWSKI,** | ) | **Case Number: 3:16-CV-02510** |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| **WESTROCK SERVICES, INC.,** | ) | **Judge Waverly D. Crenshaw, Jr.** |
| **Defendant.** | ) | **Magistrate Judge Alistair Newbern** |
| | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

### I.    INTRODUCTION

Plaintiff Michael Kulakowski's ("Plaintiff") claims of same-sex sexual harassment, assault and battery, and wage and overtime violations should be dismissed. First, Plaintiff's assault and battery claim fails as a matter of law because he cannot establish that WestRock Services is vicariously liable for any assault and battery by William "Tommy" Whited ("Whited"). Specifically, Plaintiff cannot establish Whited was acting within the course and scope of his employment when he allegedly assaulted Plaintiff. WestRock Services has established policies prohibiting assault. Moreover, Whited's conduct was in no way authorized or expected by WestRock Services, and did not serve WestRock Services in any way.[1]

Second, Plaintiff's claim for any unpaid overtime fails as a matter of law.  Plaintiff alleges he spent time answering a company cell phone outside normal hours but he admits that such calls lasted only minutes.  As a matter of law, this activity is *de minimis* activity, which is not actionable.

---

[1] Alternatively, if Whited acted within the course and scope of his employment, Plaintiff's claim is precluded by the Tennessee's Workers' Compensation Act ("TWCA").

1

Finally, Plaintiff's same-sex sexual harassment claim fails because he failed to take advantage of WestRock Services' preventive and corrective opportunities to avoid harm. WestRock Services has an anti-harassment policy as well as a corporate Compliance Hotline for employees to make reports of harassment, including anonymous reports. This Compliance Hotline was managed by a third party vendor; complaints could be submitted via the Company's intranet, by mail, by email or by calling a toll-free hotline. All complaints were directed to the Company's Legal Department for review/response. Despite his knowledge of the Compliance Hotline, Plaintiff admits he did not use the Compliance Hotline to report Whited's alleged harassment. He likewise did not report any harassment by Whited to anyone in corporate management until August 2016, when the Area Human Resources Manager sought out and interviewed Plaintiff in connection with the investigation of an unrelated anonymous Compliance Hotline report. Notably, Whited was terminated following that investigation. This is clear evidence that WestRock Services' preventative measures, including the Compliance Hotline, work. Plaintiff unreasonably failed to take advantage of WestRock Services' preventive and corrective opportunities to avoid harm. Thus, his same-sex sexual harassment claim fails.

## II.    STATEMENT OF FACTS

### A.  WestRock Services, Inc.

WestRock Services' corporate office, including Human Resources, is in Norcross, Georgia. (Henley Dep. Pg. 11; Whited Dep. Pg. 13). WestRock Services has employees in Gallatin, Tennessee at a sheet plant and a fulfillment plant.[2] (Whited Dep. Pg.7; Eden Decl. ¶ 3). One

---

[2] In 2015 and 2016, WestRock Services employed less than 45 people in Gallatin. (Hall Dep. Pgs. 47-48; White Decl. ¶ 3; McGraw Decl. ¶ 4).

General Manager oversees all personnel and operations at the Gallatin plants and is the highest ranking member of local management. (Whited Dep. Pg. 8; Hall Decl. ¶ 2; Eden Decl. ¶3). At all relevant times to this litigation, Whited was the General Manager. (Whited Dep. Pg. 7; Hall Decl. ¶ 2). Whited reported directly to Business Unit General Manager, Tom Pedine, who reported to Area Vice President, Jeb Bell.[3] (Bell Dep. Pgs. 5-7; Bell Decl. ¶ 3). Below Whited in the local management chain, Mike White was Facility Manager, Keith Hall was Customer Service Manager, and Larry Eden was Plant Manager.[4] (White Dep. Pg. 5; Bell Decl. ¶ 3).

**B. WestRock Services Prohibits Harassment, Violence, and Horseplay in the Workplace, and it has Established Procedures for Reporting Misconduct.**

WestRock Services has a policy prohibiting sexual harassment and procedures for reporting perceived harassment. The Anti-Harassment policy states:

> It is Company policy to maintain a working environment free from unlawful harassment. All employees must treat each other in a manner free from verbal or physical harassment.

> Our policy concerning harassment in the workplace is clear. Harassment is against the law and it will not be tolerated.

The policy describes how to make reports of harassment. The policies state, in pertinent part:

> Employees who believe they have been harassed must take the following immediate action:

> Express your discomfort to the harasser. Speak to the harasser about his or her conduct or behavior. State what action you find objectionable and want stopped. Respond immediately to the offending conduct or behavior. Do not ignore the problem.

---

[3] Bell reports directly to Rick Parris, Senior Vice President Central Region, who reports to Jeff Chalovich, President of Corrugated Packaging. (Bell Dep Pgs. 8-9; Bell Decl. ¶ 3).
[4] The Gallatin facility does not have an on-site local Human Resources Manager but rather shared a Human Resources Manager with other facilities. (McGraw Decl. ¶ 4; Bell Decl. ¶ 9; Whited Dep. Pg. 61; Eden Decl. ¶ 6; Kendall Decl. ¶ 3; Eden Decl. ¶ 6). Beginning in November 2014, Terri Henley ("Henley") was the Business Unit Human Resources Manager for Gallatin. (Henley Dep. Pgs. 8-9).

3

If you are not satisfied with the result, or if you are not comfortable confronting the harasser, notify your supervisor or manager, the divisional HR Director, or the Compliance Hotline at 1-800-482-9791. By notifying the Company of improper conduct, prompt steps to remedy the situation will be taken.

If the harassment continues after you have reported the conduct to your supervisor or manager, the divisional HR Director, or the Compliance Hotline, report the continued harassment to the Compliance Hotline at 1-800-482-9791. Never assume that the Company will not take appropriate action because the conduct has continued.

(Dep. Exs. 4, 5; Pl. Dep. Pgs. 53-54, 60-62). In addition, the Anti-Harassment policy prohibits retaliation.[5] (Dep. Exs. 4, 5).

WestRock Services also has a Code of Conduct that prohibits "fighting, horseplay… while at the work site or engaged in Company business." (Dep. Exs. 4-6; Pl. Dep. Pgs. 60-61, 66-67; Henley Dep. Pg. 33). Also prohibited is "unprofessional behavior, including the use of profanity and offensive language" and "threatening another individual with bodily harm or assaulting another individual at any time while on Company property, during working hours or while engaged in Company business."[6] (Dep. Exs. 4, 5; Pl. Dep. Pgs. 60-61, 66-67). Employees are directed to report any violations of the Code of Conduct through the Compliance Hotline and retaliation against individuals who make reports is prohibited. (Dep. Exs. 4, 5; Pl. Dep. Pgs. 62). WestRock

---

[5] WestRock Services' Anti-Harassment policy and Compliance Hotline are included in an Employee Handbook, which was distributed to employees at the Gallatin facility. (Dep. Exs. 4,5; Whited Dep. Pg. 77; Eden Dep. Pg. 42; White Decl. ¶ 5; Taylor Dep. Pgs. 15, 40-41; Harville Dep. Pg. 17; Eden Decl. ¶ 7; Duncan Decl. ¶ 4; Henley Dep. Pg. 40).
[6] WestRock Services provided employees with training on the Code of Conduct and Compliance Hotline in July 2015. (White Decl. ¶ 6; Taylor Dep. Pgs. 39-40).

4

Services also maintains an anti-violence policy which prohibits threats of bodily harm and assault, and again advises employees they should use the Compliance Hotline to make reports.[7] (*Id.*).

The Employee Handbook includes a full graphic page dedicated to explaining the Compliance Hotline, and the various ways to make a report. (Dep. Exs. 4, 5; Pl. Dep. Pgs. 56-58; Henley Dep. Pg. 39). Employees can make a report by: (1) calling the listed toll free number; (2) mailing to the provided address; (3) via the Company intranet; or (4) using the internet. (*Id.*). All methods of reporting can be anonymous. (*Id.*). The Compliance Hotline is also posted on the bulletin boards. (Hall Decl. ¶ 7; Eden Decl. ¶ 7; McGraw Decl. ¶ 9; Henley Dep. Pg. 39; Eden Dep. Pg. 34; Whited Dep. Pgs. 77-78). Notably, WestRock Services' Compliance Hotline is maintained by an outside vendor, which forwards complaints to WestRock Services' Legal Department for review and investigation. (Bell Decl. ¶ 6; McGraw Decl. ¶ 12; Bell Dep. Pg. 11). Human Resources assists in conducting employment related investigations. (*Id.*).

### C. Plaintiff's Employment with WestRock Services.

Plaintiff began working for WestRock Services' predecessor in October 2005 and is presently employed at the Gallatin fulfillment plant in shipping and receiving. (Pl. Dep. Pgs. 26, 34). Importantly, Plaintiff received copies of WestRock Services' employee handbook, including the Compliance Hotline and anti-harassment policy, throughout the course of his employment. (Dep. Ex. 3; Pl. Dep. Pg. 53).

---

[7] WestRock Services also has a policy directing employees to accurately record all their time worked. (Dep. Exs. 4, 5; Pl. Dep. Pgs. 63-64). The Company has a time-clock whereby employees swipe an ID card to clock in/out. (Stafford Dep. Pg. 14; Pl. Dep. Pgs. 205-206). If an employee forgets to clock in/out, or there is an error with their recorded time, they must report the incident to their supervisor so it can be corrected. (Dep. Exs. 4, 5; Pl. Dep. Pgs. 206-207). Violations of any of these policies may result in disciplinary action. (Pl. Dep. Pgs. 55, 67).

Approximately nine years ago, Plaintiff was issued a company cellphone. (Pl. Dep. Pg. 209). Plaintiff testified that over the last two-and-a-half years, he received approximately four to six after-hours calls a week from truck drivers bringing freight to the Gallatin facilities. (Pl. Dep. Pgs. 210, 212). According to Plaintiff, these calls typically lasted around two to four minutes, during which he advised drivers where to unload, etc. (*Id.*).

### D. Plaintiff Never Lodged a Complaint Against Whited.

Plaintiff claims Whited began mistreating him eight or nine years prior to the filing of his lawsuit. (Pl. Dep. Pgs. 68-69). He alleges that Whited slapped him in the groin and/or kicked him in the groin over the course of eight or nine years. (Pl. Dep. Pgs. 113-114, 123-124, 127-129). Plaintiff also alleges one incident during which Whited hit him with a broom in the back, jaw, and groin (Pl. Dep. Pg. 103), and that Whited on several occasions unzipped his pants and stated, "suck my dick." (Pl. Dep. Pg. 72). Plaintiff admits he never made any complaint to anyone at the corporate office, Human Resources, anyone in management outside the Gallatin facility, or anyone in management above Whited about any of Whited's actions. (Pl. Dep. Pgs. 84, 94, 124, 134, 136, 157-158, 183; Bryant Dep. Pgs. 46-47.). He also admits that despite his knowledge of the Compliance Hotline, he never utilized it to report any of Whited's actions.[8] (Pl. Dep. Pgs. 53, 84; Bryant Dep. Pg. 44).

---

[8] Plaintiff told Eden, Whited's subordinate, about Whited's acts of hitting him in the groin. (Pl. Dep. Pgs. 43-45, 104; Eden Dep. 14-19). However, Plaintiff never complained to Eden that Whited was harassing him and Eden did not consider Plaintiff's causal mention of Whited slapping him in the groin as a complaint of sexual harassment. (Eden Decl. ¶ 5, 8-10; Taylor Decl. ¶ 12; Eden Dep. Pgs. 14-19, 23-26, 49, 53). Rather, Eden considered Whited's conduct to be friendly horseplay. (*Id.*). Further, Plaintiff never asked Eden to file a report on his behalf. (*Id.*). Plaintiff likewise did not complain to any other manager at the Gallatin facilities that he felt harassed by Whited or ask them for assistance in making a report. (Hall Decl. ¶ 8; Hall Dep. Pg. 26; White Decl. ¶ 13-15; White Dep.23-24). Plaintiff also alleges he told Helen Kendall, an Administrative Assistant that Whited had kicked him in the groin and cussed him. (Pl. Dep. Pg. 121; Whited Dep. Pg. 61; Eden Dep. Pgs. 20-21). Kendall denies this. (Kendall Decl. ¶¶ 6, 8-9). Even so, Kendall was not a supervisor or member of management. (McGraw Decl. ¶ 6: Eden Dep. Pgs. 20-21).

### E. WestRock Services Terminates Whited After a Compliance Hotline Investigates Reveals Inappropriate Conduct.

On August 8, 2016, WestRock Services received an anonymous complaint referencing the Gallatin sheet plant indicating an employee was quitting because of the General Manager, i.e. Whited. (Dep. Ex 26; Bell Decl. ¶ 5). Henley, the Business Unit Human Resources Manager, was asked to assist in an investigation. (McGraw Decl. ¶ 15; Henley Dep. Pg. 43; Bell Decl. ¶ 8; Dep. Exs. 25, 26). Henley contacted Johanna Crowder ("Crowder"), one of two employees who recently resigned. (Henley Dep. Pgs. 43-44). Crowder reported that she had resigned because she was not happy with the work environment, and recommended that Henley speak with other employees. (Henley Dep. Pgs. 44-45). Henley traveled to the Gallatin facility on Friday, August 12, 2016 to interview employees. (Dep. Ex. 27; Henley Dep. Pg. 45; Henley Decl. ¶13). The following allegations emerged from these initial interviews: employees informed Henley that Whited instructed an employee to enter time for a former employee so that he would continue to receive pay while not working, complained about Whited's management style, and reported that Whited was in a relationship with a female subordinate employee.[9] (Dep. Exs. 16, 27; Henley Dep. Pgs. 45-49).

Henley returned to the Gallatin facility on Monday, August 15, 2016 to interview additional employees, one of whom commented that Plaintiff should have a lot to say with respect to the investigation. (Dep. Ex. 27; Henley Dep. Pgs. 48-49). Plaintiff was on vacation so Henley interviewed him by telephone the next day. (Pl. Dep. Pgs. 160-161; Bryant Dep. Pgs. 47-48; Henley Dep. Pgs. 53, 120). Plaintiff reported to Henley that Whited hit him in the groin and used

---

[9] This information was communicated to the Legal and corporate Human Resources Departments, and the investigation continued. (Dep. Ex. 16; Henley Dep. Pg. 52; McGraw Decl. ¶16).

foul language toward him at work. (Dep. Ex. 8). This was the first time Plaintiff reported to anyone in Human Resources management, or anyone in management outside the Gallatin facility, that Whited had physically hit him and used foul language toward him.[10] (Pl. Dep. Pgs. 86-88, 157-160; Bryant Dep. Pgs. 44, 46). Concerned about what he reported, Henley setup a face-to-face interview with Plaintiff the next day. (Pl. Dep. Pg. 161; Henley Decl. ¶18). During the in-person interview, Plaintiff told Henley that Whited had mistreated him for several years indicating Whited had kicked a chair out from under him, hit him with a broom, called him names including "stupid son of a bitch," and hit/kicked him in the groin on several occasions.[11] (Henley Decl. ¶18; Dep. Ex. 27). This information was reported to the Legal and corporate Human Resources Departments and Whited's superiors. (Dep. Ex. 16; Melinda Decl. ¶ 6; Bell Decl. ¶; Bell Dep. Pg. 15, 20-21).

The investigation concluded on or about August 26, 2016, and the results of the investigation were presented to Whited's superiors[12] who all agreed Whited's employment must be terminated. (Bell Dep. Pgs. 8-9, 11, 25, 28-29; Bell Decl. ¶ 9-10; McGraw Decl. ¶ 17-21). On August 30, 2016, Bell informed Whited that his employment was terminated, effective immediately. (Bell Decl. ¶ 4; Bell Dep. Pg. 25, 28-29; Whited Dep. Pg. 6).

## III.  LEGAL ANALYSIS
### A.  Summary Judgement Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[10] Plaintiff did not tell Henley about all of Whited's alleged misconduct. (Pl. Dep. Pgs. 167-168).

[11] Plaintiff also vaguely stated Whited had grabbed his own zipper, shook it, and told Plaintiff to come into the bathroom, but Plaintiff did not elaborate to Henley what that meant. (Pl. Dep. Pg. 167; Dep. Ex. 16; Henley Dep. Pgs. 102, 122). Plaintiff admits he did not tell Henley about all of Whited's alleged bad acts, claiming he was scared of Henley. (Pl. Dep.Pgs.167-168, 170-172).

[12] Bell, Parris and Chalovich. (Bell Dep. Pgs. 8-9, 11, 25, 28-29; Bell Decl. ¶ 9-10; McGraw Decl. ¶ 19).

genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment should be granted when the moving party establishes the absence of a genuine dispute as to material facts concerning an essential element of the nonmoving party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Following a motion for summary judgment, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, and upon which he bears the burden of proof at trial, there is no genuine dispute as to any material fact because the failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment. *Id.*

**B. Plaintiff's Assault and Battery Claims Fail.**

Plaintiff's claim that WestRock Services should be held vicariously liable for Whited's assault and battery of him fails as a matter of law for two independent legal reasons. First, Plaintiff is unable to show that Whited's conduct was within the scope of his employment as required by the doctrine of *respondeat superior* to establish vicarious liability. The evidence shows Whited's conduct was in clear violation of company policy, was not authorized by WestRock Services, and in no way served the Company. Alternatively, Plaintiff's tort claim against WestRock Services is precluded by the TWCA.

1. <u>Whited was not Acting in the Course and Scope of his Employment.</u>

When one employee commits an intentional tort against another, the employer cannot be held liable unless the employer intended for the tortious conduct to occur. *Raines v. Shoney's, Inc.*, 909 F.Supp. 1070, 1082 (E.D. Tenn. 1995); citing *Williams v. Smith*, 435 S.W.2d 808, 810 (Tenn.

9

1968). In Tennessee, the doctrine of *respondeat superior* is used to determine whether an employer is vicariously liable for torts committed by an employee. See *Russell v. City of Memphis*, 106 S.W.3d 655, 657 (Tenn. Ct. App. 2002). Under the doctrine of *respondeat superior*, an employer is liable for torts committed by its employees only if the employee was acting within the scope of his employment. *Hughes v. Metro. Gov't of Nashville and Davidson County*, 340 S.W.3d 352, 363 (Tenn. 2011). An employee's conduct occurs within the scope of their employment "if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." *Id*. An employee's conduct is outside the scope of employment if it is not authorized or if its purpose is not motivated by a purpose to serve the employer. *Id*. at 364.

Plaintiff's assault and battery claim against WestRock Services fails based upon Plaintiff's own testimony proving that Whited's conduct was outside the scope of his employment. There is no evidence that it was part of Whited's job duties to assault or batter Plaintiff. In fact, Plaintiff testified WestRock Services had policies in place prohibiting Whited's assault and battery of him. (Pl. Dep. Pgs. 60-62, 66, 193-196). Plaintiff admitted he has no evidence that anyone at WestRock Services instructed Whited to hit/kick him (or engage in the other alleged bad acts) or that it was part of Whited's job duties to hit/kick employees (or engage in the other alleged bad acts). (Pl. Dep. Pgs. 193-197). He admitted Whited's hitting/kickking/bad acts did not serve or benefit the Company in any way, or further WestRock Services' business in any way. (*Id.*). He testified Whited's hitting/kicking/bad acts were not authorized or intended by WestRock Services. (*Id.*).

10

Plaintiff cannot present any evidence whatsoever that WestRock Services expected, authorized or intended Whited to hit/kick him (or engage in the other alleged bad acts). (*Id.*).

Similarly, while Whited denies that he actually hit/kicked Plaintiff (and denied other alleged bad acts), Whited testified the conduct Plaintiff alleges took place would be outside the scope of his employment. Whited testified that hitting/kicking Plaintiff (and all of the other alleged bad acts) was not part of his job duties, not something he was employed to do, and in no way would have served WestRock Services. (Whited. Dep. Pgs. 66-76, 78-80). Whited testified that hitting/kicking Plaintiff (and all of the other alleged bad acts) is not something WestRock Services expected from him as General Manager or authorized him to do. (*Id.*).

There is no evidence to support a *prima facie* showing of *respondeat superior* liability. In fact, all of the evidence establishes the exact contrary. Whited's conduct was outside the scope of his employment.[13] As a result, WestRock Services cannot be held vicariously liable for Whited's assault and battery and Plaintiff's claim must be dismissed. See *Sullivan v. Morrow*, 504 S.W.2d 767 (Tenn. Ct. App. 1973) (employer not liable for employee's assault of plaintiff since employee was acting outside the scope of his employment and there was no evidence employee was acting for or on behalf of employer)..

    2.   <u>Alternatively, Plaintiff's Assault and Battery Claim is Precluded by the TWCA.</u>
Plaintiff's claim of assault and battery should be dismissed because the evidence, including Plaintiff's own admissions, clearly demonstrate that Whited was not acting within the course and scope of his employment when he hit/kicked/mistreated Plaintiff. However, if Whited is deemed

---

[13] It is clear that Whited was not employed by, authorized by or expected by WestRock Services to hit/kick employees in the groin or anywhere else. Rather this conduct was expressly prohibited. (Pl. Dep. Pgs. 59-62, 66, 193-197; Bell Decl. ¶10-12; McGraw Decl. ¶18; Hall Decl. ¶11; Whited Dep. 66-67, 75-76).

to have acted within the course and scope of his employment, Plaintiff's assault and battery claim should be dismissed because it is precluded by the TWCA.

The TWCA provides employees with their exclusive remedy against their employers for work-related injuries. *Lang v. Nissan N.A., Inc.*, 170 S.W.3d 564, 572 (Tenn. 2005). For the TWCA to apply: "(1) the injury must arise out of plaintiff's employment; and (2) the injury must have occurred during the course of plaintiff's employment." *Gray v. McDonald's Corp.*, No. 2:10-cv-2779, 2011 WL 13116678 at *2 (W.D. Tenn. Mar. 14, 2011). The TWCA defines the term "injury" as "an injury by accident . . . arising primarily out of and in the course and scope of employment." Tenn. Code Ann. §50-6-102(14). In Tennessee, injuries arising from assaults in the workplace qualify as "accidental" for purposes of the TWCA. *Gray*, 2011 WL 13116678 at *3; citing *Beck v. Tennessee*, 779 S.W.2d 367, 371 (Tenn. 1989) (holding assault on employee at workplace was "accidental" and therefore compensable).[14] Even if the co-worker is a supervisor, a plaintiff's exclusive remedy against the company is under the TWCA. *Blair*, 756 S.W.2d at 270-271 (holding workers' compensation benefits were the exclusive remedy against employer for alleged assault by supervisor); *Gray*, No. 2:10-cv-2779, 2011 WL 13116678, at *2-4 (same). Further, it is well settled that "[e]mployers cannot be sued at common law for an employee's injuries unless the employee shows that the **employer actually intended** to injure the employee." *Blair,* 756 S.W.2d at 270. (Emphasis added). Plaintiff's claim is preempted by the TWCA and any damages related to injuries sustained must be recovered through the TWCA. *Id.*

---

[14] See also, *Williams v. Smith*, 435 S.W.2d 808, 809 (Tenn. 1968) (observing assault by co-employee is an injury "by accident on the theory the incident was unexpected or unusual . . .")

12

a. Plaintiff's alleged injuries arose out of his employment.

Under the TWCA, any injury Plaintiff sustained from Whited's alleged assault or battery arose out of his employment. The requirement that the injury "arise out of" employment refers to the "origin or cause" of the injury. *Hill v. Eagle Bend Mfg., Inc.*, 942 S.W.2d 483, 488 (Tenn. 1997). An injury "arises out of one's employment when there is . . . a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Clawson v. Burrow*, 327 S.W.3d 638, 644 (Tenn. Ct. App. 2010). This standard has been very broadly interpreted. See *Bell v. Kelso Oil Co.*, 597 S.W.2d 731, 737 (Tenn. 1980) (employee stabbed by non-employee in hotel parking lot after sales meeting sustained an injury arising out of his employment).[15] Plaintiff testified Whited hit/kicked/mistreated him at work, during Plaintiff's working hours, and while Plaintiff was actually performing work. (Pl. Dep. Pg. 196). Under the TWCA, Plaintiff's alleged injuries from assault and battery arose out of his employment.

b. Plaintiff's alleged injuries occurred during the course and scope of his employment.

Under the TWCA, Plaintiff's alleged injuries from Whited's assault and battery occurred during the course and scope of Plaintiff's employment. The "course of employment" requirement refers to the "time, place and circumstances under which the injury occurred." *City of Tullahoma v. Ward*, 114 S.W.2d 804, 807 (Tenn. 1938). Under the TWCA, an employee's injuries occur "during the course of employment" when they occur on the employer's premises, or when the employee is coming or going to the employer's premises. See *Lollar v. Wal-Mart Stores, Inc.*, 767

_____

[15] See also, *Whaley v. Patent Button Co.*, 202 S.W.2d 649 (Tenn. 1947) (employee shot while at work by non-employee stranger for unknown reason presented an injury arising out of his employment); *Carmichael v. J.C. Mahan Motor Co.*, 11 S.W.2d 672 (Tenn. 1928) (employee shot in eye by child with air gun presented a claim that arose out of his employment because working around other people and visitors presented a risk of injury by said persons).

13

S.W.2d 143, 150 (Tenn. 1989); *Gray*, No. 2:10-cv-2779, 2011 WL 13116678, at *3. Plaintiff testified that all of Whited's bad acts occurred while Plaintiff was at work, during Plaintiff's working hours, and while Plaintiff was performing work. (Pl. Dep. Pg. 196). Under the TWCA's broad definition of "during the course and scope of employment," Plaintiff's injuries occurred within the TWCA's definition of "course and scope of employment."

Because Plaintiff's alleged injuries arose out of the course and scope of his employment with WestRock Services, he is precluded from bringing a common law tort claim for damages against WestRock Services. His exclusive remedy for common law assault and battery against WestRock Services is through the TWCA and thus, his claim should be dismissed. See *Valencia v. Freeland & Lemm Const. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003) ("[W]orkers' Compensation law provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury.").

c. Plaintiff's assault and battery claim against WestRock Services does not fall within the "intentional tort" exception to the TWCA.

Moreover, there is no evidence that WestRock Services intended for Whited to assault or batter Plaintiff; thus, Plaintiff's claim does not fall under any recognized exception to the TWCA's exclusivity provision. The only tort claims exempt from the TWCA's exclusivity provision are intentional torts committed by an employer with "actual intent" to injure its employee.[16] *Id.* An employer's tort is "intentional" for purposes of avoiding the exclusivity provision of the TWCA

---

[16] The actual intent exception "is a 'narrow exception' to the exclusive remedy provision…." *Rodgers v. GCA Services Group, Inc.*, No: W2012-01173-COA-R3-CV, 2013 WL 543828, at 4* (Tenn. Ct. App. Feb. 13, 2013).

14

only if the employer had "actual intent" to cause injury to the plaintiff.[17] See *Mize v. Conagra, Inc.,* 734 S.W.2d 334, 336 (Tenn. Ct. App. 1987) (explaining allegations and evidence employer operated in a grossly negligent manner, even if true, are insufficient to establish actual intent to injure). Therefore, an employee cannot sustain a tort action against his employer under the intentional tort exception unless the employee can prove the employer acted with "actual intent to injure."[18] *Valencia*, 108 S.W.3d at 240.

Plaintiff alleges Whited intentionally hit/kicked/mistreated him. Plaintiff does not however allege, and there is no evidence to suggest, that WestRock Services actually intended Whited to do so or intended to injure Plaintiff. (Pl. Dep. Pgs. 193-197). WestRock Services has a policy that expressly prohibits violence, assault and horseplay in the workplace. (Pl. Dep. Pgs. 60-62, 66-67; Bell Decl. ¶10, 12; Bell Dep. 13; Dep. Exs. 4, 5). As the highest-ranking member of local management in Gallatin, Whited was aware of WestRock Services' policy prohibiting violence, assault and horseplay. (Whited Dep. Pgs. 57, 66-67). In fact, he was responsible for ensuring compliance with these policies. (*Id.*; Pl. Dep. Pg. 48). What's more, Plaintiff himself testified WestRock Services did not intend for Whited to engage in any of his bad acts against Plaintiff. (Pl. Dep. Pgs. 193-197). Plaintiff cannot establish WestRock Services intended for him to be assaulted or battered or injured by Whited. (*Id.*) As a result, Plaintiff's assault and battery claim should be dismissed as preempted by the TWCA's exclusivity provision.

---

[17] The existence of defendant's actual intent to injure, not the nature of the tort, is determinative of whether the exception to the exclusive remedy provision applies. *Coltraine v. Fluor Daniel Facility Servs. Co*., No. 01A01-9309-CV-00419, 1994 WL 279964, at *4 (Tenn. Ct. App. June 22, 1994).

[18] In the absence of "actual intent," the plaintiff is limited to workers' compensation remedies. *Id.*

15

3. <u>Plaintiff may not sidestep the TWCA's exclusivity provision by asserting his assault and battery claim is in fact a sexual harassment claim.</u>

Plaintiff asserts separate claims for sexual harassment and common law assault and battery based upon the same alleged conduct by Whited. While sexual harassment claims are not precluded by the TWCA, Plaintiff's common law tort claim certainly is. As a result, his common law tort claim should be dismissed and his remedies for any alleged sexual harassment should be limited to his claim for sexual harassment under the THRA.

The THRA provides the exclusive state law remedy for sexual harassment in the workplace. See *Fleming v. Sharp Mfg. Co. of America*, No. 11-2911, 2012 WL 3049624, at *5 (W.D. Tenn. July 25, 2012). Plaintiff cannot claim Whited's conduct amounted to sexual harassment to avoid preemption by the TWCA on one hand and on the other assert that state law remedies applicable to sexual harassment under the THRA do not apply. See *McAllister v. Quality Mobile X-Ray Services, Inc.*, No. 3:12-cv-0078, 2012 WL 3042972, at *8 (M.D. Tenn. July 25, 2012) (TRAUGER, J. dismissing plaintiff's common law claim since it was based on same set of facts on which THRA employment discrimination claim was based, and THRA provided exclusive remedy for employees alleging employment discrimination). Indeed, this Court has dismissed common law tort claims brought against employers in cases where plaintiffs simultaneously asserted assault and battery in conjunction with sexual harassment claims under Title VII and the THRA based upon the same conduct. In *Bishop v. Woodbury Clinical Laboratory, Inc.*, the plaintiff filed suit under Title VII and the THRA alleging she was subjected to sexual harassment and a hostile work environment by the actions of her supervisor. No. 3:08-1032, 2010 WL 1609949 (M.D. Tenn. April 20, 2010). Relying on the same set of operative facts, Bishop asserted a separate claim for assault and battery. The court dismissed Bishop's assault and battery claim, explaining

16

"the exclusive remedy provision of the Worker's Compensation Act bars a common law tort action against the employer where an employee supervisor intentionally commits an assault and battery upon a fellow employee." *Id*. at *2.[19]

Plaintiff cannot assert Whited's conduct was sexual harassment to avoid the TWCA and at the same time assert the exact same conduct is not subject to the THRA for purposes of any potential recovery. As a result, Plaintiff's assault and battery claim should be dismissed.

### C. Plaintiff's FLSA Claim Fails

Plaintiff's claim he was not paid for answering after-hours calls in violation of the FLSA fails as a matter of law.[20] To make out an FLSA wage violation claim, "plaintiff must prove by a

---

[19] See also *Bellomy v. AutoZone, Inc.*, 2009 WL 4059158 (Tenn. Ct. App. Nov. 24, 2009) (holding TWCA was plaintiff's exclusive remedy for claims based on intentional torts in case also involving claims of sex discrimination); *Johnson v. Dollar General Corp.*, No. 2:06-cv-173, 2008 WL 2781660, at *8 (E.D. Tenn. July 14, 2008) (holding TWCA exclusivity doctrine barred plaintiff's common law tort claims against employer. While plaintiff alleged his supervisors committed the intentional tort of assault, there was no proof employer intended to harm plaintiff); *Bullion v. Ford Motor Co.*, 60 F.Supp.2d 765, 772 (M.D. Tenn. 1999) (employer not vicariously liable for intentional torts committed by plaintiff's coworkers even though they were intertwined with sexual discrimination claim since there was no evidence employer intended for the tortious conduct to occur).

[20] Plaintiff alleges he was called back to the facility after hours to work and was not compensated for such but Plaintiff's claim in this regard is barred by the FLSA's two year statute of limitations. 29 U.S.C. § 255(a). Plaintiff's FLSA claim related to being called back to work is based upon alleged occurrences that go back ten years. (Pl. Dep. Pgs. 204-207, 220-221). Notably, when questioned at his deposition, Plaintiff testified he could not recall any instances of working off the clock at the Gallatin facility during the last four years. (Pl. Dep. Pgs. 204-209). Thus, Plaintiff's claim that he worked off the clock at the facility should be dismissed. See *Hajiani v. ESHA USA, Inc*., No. 3:14-cv-594, 2017 WL 5163354, at *8-10 (E.D. Tenn. Nov. 7, 2017) (dismissing FLSA claim on statute of limitations grounds).

Additionally, any such claim should be dismissed because "under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *White v. Baptist Memorial Health Care Corp*., 699 F.3d 869, 876 (6th Cir. 2012). The only exceptions to the rule are where an employer prevents an employee from reporting overtime or when the employer is notified of the employees' unreported work. *Id. See also Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 389 (6th Cir. 2016). WestRock Services has reasonable processes for employees to report all hours worked. (Pl. Dep. Pgs. 63-64, 205-207). Pursuant to Company policy, employees are prohibited from working off the clock, and they are directed to accurately record all time worked. (Dep. Exs. 4, 5). Plaintiff acknowledged his receipt of the Employee Handbook including these policies and affirmed he would comply with them. Plaintiff was fully aware or should have been aware of WestRock Services' time reporting policies and nonetheless failed to record the time he alleges was unpaid. (Dep. Ex. 3; Pl. Dep. Pg. 53, 63-64, 67). Moreover, Plaintiff admitted in his deposition he does not recall anyone in management instructing him not to record his time. (Pl. Dep. Pg. 206). It is incredulous of Plaintiff to violate WestRock Services' specific policies and procedures and then assert a claim against the company for his wrongdoing. The Sixth Circuit recently explained, an "employee bears some responsibility for the proper

17

preponderance of evidence that [he] performed work for which [he] was not properly compensated." *Myers v. Copper Cellar Corp.,* 192 F.3d 546, 551 (6th Cir. 1999). However, activities that require no more than a *de minimis* amount of time are not compensable under the FLSA; "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Jordan v. IBP, Inc.*, 542 F.Supp.2d 790, 810 (M.D. Tenn. Mar. 31, 2008). Whether time spent on an activity is *de minimis* is determined after considering "the amount of daily time spent on the activity, as well as '(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work.'" *Id.* (quoting *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984).

Plaintiff's claim that he was not compensated for after-hours telephone calls should be dismissed because the evidence, construed in a light most favorable to Plaintiff shows that any such time spent was no more than a *de minimis* amount for which he is not entitled to compensation as a matter of law. *Jordan*, 542 F.Supp.2d at 810. Plaintiff claims he was required to carry a company cellphone and answer calls after his regular working hours. He confirms that any phone calls he took before or after his shift would have been infrequent and lasted no more than a few minutes. Plaintiff testified that for the last two-and-a-half years, he received approximately four to six calls a week. (Pl. Dep. Pgs. 212-214). The calls were typically from truck drivers and typically only lasted three to four minutes. (Pl. Dep. Pgs. 210-213). Thus, based upon his own testimony,

---

implementation of the FLSA's overtime provisions." *White*, 699 F.3d at 876. Because Plaintiff knowingly failed to follow WestRock Services' time recording policies, he should not be able to claim the Company was at fault. *Id.* (explaining "if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process."). Plaintiff's FLSA claim should be dismissed.

18

any amount of time Plaintiff spent after his shift on his company cellphone answering questions was insubstantial and amounts to nothing more than a *de minimis* activity, which is not actionable.[21] See *Ruffin v. MotorCity Casino*, 775 F.3d 807, 812 (6th Cir. 2015) (gathering case law to support rule that monitoring a radio during meal break and being available to respond if called is a *de minimis* activity, not a substantial job duty under the FLSA); *Chambers v. Sears Roebuck and Co.*, 428 Fed.App'x. 400 (5th Cir. 2011) (making phone calls to customers prior to shift start was a *de minimis* activity since calls would only take a minute or so).[22] As a result, Plaintiff's FLSA claim should be dismissed because based upon his own testimony of *de minimis* activity, he is not entitled to compensation.

### D. Plaintiff's Sexual Harassment Claim Fails

Plaintiff's same-sex sexual harassment claims should be dismissed. To establish such a claim, Plaintiff must demonstrate: (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his status as a member of a protected class; (4) the harassment affected a term, condition, or privilege of employment, i.e. it was severe or pervasive in nature; and (5) employer liability.[23] *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir.2009). With respect to same-sex harassment, claims are recognized where: (1) the harasser making sexual advances is acting out of sexual desire; or (2) where the harasser is motivated by

---

[21] Moreover, given the nature of any calls Plaintiff received after hours, they would have varied in length, from a few seconds to a few minutes, and would have come in at random times. Practically speaking, it would have been difficult administratively to record the exact amount of time Plaintiff spent on each call throughout the week establishing such calls are *de minimus* in nature and thus not compensable. *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998("the practical difficulty of supervising and recording the additional time weighs in favor of finding it non-compensable.").

[22] See also, *Lindow v. U.S.*, 738 F.2d 1057, 1062 (9th Cir. 1984) (gathering case law and explaining "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable.").

[23] Claims brought under the THRA are analyzed according to the same standards as those brought under Title VII. *Ellsworth v. Pot Luck Enterprises, Inc.*, 624 F.Supp.2d 868, 875 (M.D. Tenn. 2009).

19

general hostility to the presence of men in the workplace; or (3) where the plaintiff offers comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. *Ellsworth v. Pot Luck Enterprises, Inc.*, 624 F.Supp.2d 868, 876 (M.D. Tenn. 2009). "Regardless of which of these three circumstances applies, the plaintiff must always prove that the conduct was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination . . . because of sex.'" *Id.* (citing *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80-81 (1998)).

1. Plaintiff Was Not Harassed Because of His Sex

Plaintiff has alleged a litany of bad behaviors by Whited.[24]  However, for purposes of his same-sex harassment claim, we are limited to Plaintiff's allegations that Whited hit/kick/grabbed him in the groin/behind.[25] Ostensibly, Plaintiff will argue that Whited's actions are covered by the

---

[24] Plaintiff testified that Whited hit Plaintiff with his truck, and tried to run Plaintiff over in the parking lot. (Pl. Dep. Pg. 136-138). However, Plaintiff testified Whited was just playing. (*Id.*). Thus, these allegations should not be considered for purposes of his same-sex harassment claim. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993) (explaining "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."). Notably, Plaintiff never reported this incident to anyone prior to his deposition. (*Id.* at Pg. 138).
Plaintiff also alleges Whited would try to aggravate him by asking him to stay late so Whited could "go home and fuck [Plaintiff's] wife." (Pl. Dep. Pgs. 90-91). Such comments are not typically actionable.  See *English v. Pohanka of Chantilly, Inc.,* 190 F.Supp.2d 833, 845-46 (E.D. Va. 2002) (noting that while comments and questions about plaintiff's intimate relations with his wife were sexual, they did not imply any desire for a homosexual relationship, and in actuality undercut any inference alleged harasser had a sexual interest in plaintiff); see also *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("the sporadic use of abusive language, gender-related jokes, and occasional teasing" are generally not actionable). Additionally, it is hard to contemplate how this could be construed as sexual harassment aimed at Plaintiff because of his sex when any arguably sexual context is directed at Plaintiff's wife. See *Id.* Notably, Plaintiff never reported this to anyone prior to his deposition. (Pl. Dep. Pgs. 135-136).
Plaintiff also alleges Whited called him "stupid motherfucker" and "Pollock" but Plaintiff cannot establish these comments amounted to sexual harassment because he used the same language in the workplace. See *Disler v. Target Corp.*, No. 3:04-cv-191, 2005 WL 2127813 (E.D. Tenn. Aug. 31, 2005) ("Where a plaintiff's action in the work place shows that she was a willing and frequent participant in the conduct at issue, courts are less likely to find that the conduct was 'unwelcome' or 'hostile.'") ((quoting *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982)). Plaintiff admits he uses curse words in the workplace and he himself used the term "mother fucker." (Pl. Dep. Pgs. 131-134; Hall Decl. ¶10; White Decl. ¶14; White Dep. Pgs. 21-22; Duncan Dep. Pg.19; Whited Dep. Pg. 65-66). He also referred to himself as a "Pollock."  (White Dep. Pgs. 21-22; Whited Dep. Pg. 34).
[25] Plaintiff also alleges that Whited exposed his penis and said "suck my dick."  Notably, Plaintiff never reported that Whited exposed himself prior to his deposition. (Dep. Exs. 19, 27).  Rather, he reported that Whited grabbed his own

20

prohibition of sexual discrimination/harassment contained in Title VII and the THRA because they imply a sexual act. As detailed below, Plaintiff's claim that Whited's conduct amounts to same-sex harassment fails. That extension of the law of sexual harassment is not consistent with the premises on which Title VII or the THRA are based. Title VII and the THRA were never intended as a "general civility code" (*Oncale,* 523 U.S. at 78); they were intended to curtail illegal discrimination and related illegal harassment based upon protected categories due to animus against those protected categories in the workplace. Whited's conduct, as alleged by Plaintiff, is objectionable, inappropriate and unprofessional. But it is not actionable gender-based harassment.

It is important to start with the origin of the recognition of same-sex harassment claims. In *Oncale*, the Supreme Court noted that the law does not presume that human beings will not discriminate against members of their own group. *Oncale*, 523 U.S. at 78. But, that alone, does not end the analysis of the sufficiency of stating an actionable claim. "We have never held that

---

zipper. (Dep. Ex. 27). Regardless, this allegation should not be considered for purposes of Plaintiff's same-sex harassment claim. First, Plaintiff cannot establish through comparative evidence that his allegation that Whited exposed his penis to Plaintiff and said "suck my dick" is "based upon sex" where there are allegations that Whited engaged in similar behavior toward females in the workplace. There has been an allegation that Whited exposed his penis to a female employee and asked her to touch it. (McGraw Decl. ¶ 14). Both allegations are inappropriate in the workplace. However, Plaintiff cannot establish through comparative evidence that Whited's alleged conduct was directed at him because of his sex when Whited allegedly engaged in similar conduct toward a female. *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000) (explaining Title VII does not cover the "equal opportunity" harasser, because that person is not discriminating on the basis of sex).

Additionally, Whited's off-color comment is not actionable when the comment is viewed in the appropriate context. The only two individuals who testified that they heard Whited comment, "suck my dick" testified that Whited did not expose his penis and the comment was not actually sexual in nature. (White Decl. ¶14; White Dep. Pgs. 15-16; Harville Decl. ¶7; Harville Dep. Pg. 18). Rather, it was an expletive used to express his point that something was not going to happen similar to the phrase "when hell freezes over" or "when pigs fly." (*Id.*). When the actual context of Whited's comment is considered, Whited's comment does not amount to actionable harassment based upon sex. *See Johnson v. Hondo, Inc.* 125 F.3d 408, 412 (7th Cir. 1997) (noting "expressions such as 'fuck me,' 'kiss my ass,' and 'suck my dick,' are commonplace in certain circles, and more often than not, when these expressions are used (particularly when uttered by men speaking to other men), their use has no connection whatsoever with the sexual acts to which they make reference . . . they are simply expressions of animosity or juvenile provocation"); *see also Oncale*, 523 U.S. at 81-82 (noting not all behavior of a sexual nature is actionable under Title VII. The reviewing Court must take into account the social context in which the conduct occurred).

21

workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id*. at 80. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id*. "[T]he statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace…" *Id*. at 81. "In same-sex (as in all) harassment cases that inquiry [into all the circumstances] requires careful consideration of the social context in which particular behavior occurs and is experienced by its target . . . . The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id*. at 81-82. Whether behavior constitutes harassment should not be determined based simply on a snapshot of the words used or the physical acts performed. *Id*. at 82. Rather, "[c]ommon sense, and an appropriate sensitivity to social context" must prevail. *Id*.

Since *Oncale*, this admonition has been heeded by courts finding that allegations of misconduct involving "sexual" subjects was insufficient to support claims of same-sex sexual harassment. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 562 (7th Cir. 2016) (allegations that male co-worker poked and slapped male plaintiff's buttocks, grabbed plaintiff between his legs, and teased plaintiff were insufficient as a matter of law to create inference plaintiff was

22

discriminated against "because of sex")[26]; *see also Lavack v. Owen's World Wide Enterprise Network, Inc.*, 409 F.Supp.2d 848 (E.D. Mich. 2005) (allegations that male supervisor touched male plaintiff's upper leg, slapped plaintiff's genitals with a ruler, and made sexual comments and verbal advances were insufficient as a matter of law to create inference plaintiff was discriminated against "because of sex" even where the supervisor commented "if you and I went camping in the woods, and I had anal sex with you, would you tell anyone" and when the plaintiff responded no, asked him to go camping).[27]

No one will argue that Plaintiff's allegations, taken as truth, do no amount to conduct that is reprehensible in a work environment. There is no question such conduct was prohibited by company policy and WestRock Services will not defend Whited's actions. In fact, the Company terminated Whited's employment because it found his actions contrary to its policies and procedures and simply unacceptable. It is important, however, to separate the fact that Whited's conduct is inexcusable from the question of whether that conduct is actionable because it is discrimination because of sex, i.e. was Plaintiff treated differently in the workplace out of animus because he is male. The answer is "No." However reprehensible, the record is clear that Whited'

---

[26] The Court in *Lord* explained that taking plaintiff's allegations as true, he failed to establish he was harassed because of his sex. The Court noted "[s]exual horseplay differs from sex *discrimination*, and Title VII covers only discriminatory conduct." (emphasis original) (citations omitted) *Lord*, 839 F.3d at 562. The Plaintiff in *Lord* offered no evidence from which a jury could infer he was harassed because the harasser was homosexual, or that the harasser's conduct reflected a general hostility to the presence of men in the workplace. Nor did the plaintiff offer evidence to establish that only male employees were targeted "because of sex." *Id.*

[27] When the plaintiff reported the supervisor's conduct to the Company's Director of Operations, he was allegedly told that the harasser was a prankster, and that the harasser would sometimes "grab your butt" or "hit you towards the front area." *Lavack*, 409 F.Supp.2d at 852. The Plaintiff in *Lavack* asserted although there were men and women in the workplace, the harasser did not subject women to any of his offensive comments and touching. *Id.* at 854. Rejecting the plaintiff's same-sex harassment argument, the Court reasoned that the simple fact a male supervisor working side by side with men and women did not also subject women to offensive comments and touching is insufficient to establish gender discrimination. *Id.*

23

conduct toward Plaintiff was the result of a misguided personal concept of comradery and because Plaintiff did not mount a defense, not because Plaintiff is male. Courts have distinguished actionable sexual harassment in the workplace from "male on male horseplay" or "sexual horseplay" between men. It is also important to note that the term "horseplay" is not limited to innocuous conduct; it has been used to describe conduct similar to that alleged by Plaintiff. *See Lord*, 839 F.3d at 562; *Lavack*, 409 F.Supp.2d at 855.

Whited's alleged conduct is abhorrent but there is no evidence establishing the conduct was based on his gender. There is no evidence Whited had any sexual interest in Plaintiff.[28] There is no evidence Whited's conduct was motivated by general hostility toward men. To the contrary, several witnesses testified that Whited was friends with many of the men he worked with, including Plaintiff. (Whited Dep. Pgs. 27, 30, 62-64; Hall Decl. ¶4; Taylor Decl. 8; Eden Decl. ¶5). Whited himself testified his conduct (he did not admit to all the conduct alleged by Plaintiff) was the result of comradery, i.e. play between long time co-workers who were friendly with one another. (Whited Dep. Pgs. 27, 30-31, 53-54, 62-64, 81-82). Other employees who worked with Whited and Plaintiff testified similarly. (Hall Decl. ¶4-6, 8; Eden Decl. ¶5, 9; Eden Dep. Pg. 51; White Decl. ¶11-12; Taylor Decl. ¶6-8; Taylor Dep. Pg.13; Harville Decl. ¶6,8). Whited testified he did not engage in the same type of conduct with female employees because they had not worked together as long and thus, was not as friendly with one another. (Whited. Dep. Pg. 81). He likewise did not engage in such conduct with new/temporary male employees. (Whited Dep. Pgs. 63, 81-82). Plaintiff cannot establish Whited treated male employees different based on their gender where the reason

---

[28] To the contrary, Plaintiff testified that Whited had a sexual interest in women, including a subordinate female employee. (Pl. Dep. Pgs. 149-150). Other employees have testified similarly. (White Decl. ¶10; Taylor Decl. ¶13).

24

for his differentiating treatment is juvenile comradery. *Lord*, 839 F.3d at 562; *Lavack*, 409 F.Supp.2d 848; *see also Arambru v. Boeing Co.*, 112 F.3d 1398, 1405-06 (10th Cir. 1997) (animus or personality conflicts not related to a protected class are not evidence of improper discrimination); *Clements v. Smith's Food & Drug Centers, Inc.*, No. 2:05-cv-467, 2007 WL 1815675, at *5 (D. Utah June 21, 2007) (favoritism of some employees over others does not constitute sexual harassment); *Noble v. Monsanto Co.*, 973 F.Supp. 849, 855 (S.D. Iowa 1997) (ridicule is not actionable absent some showing that it was based on sex). Plaintiff cannot establish Whited's conduct was based upon his gender. His same-sex harassment claim should be dismissed.

### 2.  WestRock Services is Entitled to the *Ellerth/Faragher* Affirmative Defense.

Plaintiff's same-sex sexual harassment claim also fails because WestRock Services has the benefit of the *Ellerth/Faragher* affirmative defense. This defense provides that an employer will not be held vicariously liable for harassment by a supervisor if the employer establishes: "(a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[29] *Thornton v. Federal Express Corp.,* 530 F.3d 451, 456 (6th Cir. 2008).

### a.  WestRock Services Exercised Reasonable Care to Prevent and Correct any Harassing Behavior.

WestRock Services exercised reasonable care to prevent and correct any sexually harassing behavior. Generally, an employer satisfies the first element of the *Ellerth/Faragher* defense when it has publicized a sexual harassment policy. *EEOC v. AutoZone, Inc.*, 692 Fed.App'x. 280, 284

---

[29] Unlike Whited, who was terminated, Plaintiff remains employed by WestRock Services receiving the same benefits and pay. (Pl. Dep. Pg. 26). He has not suffered a tangible employment action.

(6th Cir. 2017). WestRock Services had an anti-harassment policy and Code of Conduct prohibiting sexual harassment including ways to report perceived harassment. (Pl. Dep. Pg. 53; Dep. Exs. 4, 5). Employees are provided with an avenue to report harassment outside of local management in the event a supervisor/manager is involved. (Pl. Dep. Pgs. 53, 56-57, 61-62; Henley Dep. Pgs. 44, 126; Dep. Exs. 4, 5). Employees can report any such harassment to corporate Human Resources and/or via the Compliance Hotline. (Dep. Exs. 4, 5). Moreover, the policy expressly directs employees who are not satisfied after making an initial report to a local supervisor/manager to make a report via the Compliance Hotline or to corporate Human Resources. (*Id.*). Moreover, the employee handbook includes a full graphic page titled "Compliance Hotline" providing employees with four ways to make reports, including anonymous reports.[30] (Dep. Exs. 4, 5; Pl. Dep. Pgs. 53-58, 61-62; Henley Dep. Pgs. 126-127). Plaintiff does not dispute WestRock Services had these policies and procedures in place. (Pl. Dep. Pg. 53-62, 65-67; Bryant Dep. Pgs. 44; Dep. Exs. 4, 5). Despite his knowledge of such, Plaintiff admits that he failed to make any report to corporate Human Resources, corporate management or via the Compliance Hotline throughout the years he alleges Whited harassed him. (Pl. Dep. Pgs. 84, 98, 101-103, 107-108, 111, 116, 119-121, 123, 127-130, 134-136, 138, 140-142, 157; Henley Dep. Pgs. 126-127; Bryant Dep. Pgs. 44, 46).

Moreover, it is clear that WestRock Services would have taken action to stop any alleged harassment had Plaintiff made a report to corporate Human Resources management, the Compliance Hotline or anyone with managerial authority over Whited. Indeed, WestRock

---

[30] The Compliance Hotline is also posted on bulletin boards at the facility. (Hall Decl. ¶7; Eden Decl. ¶7; McGraw Decl. ¶9; Henley Dep. Pg. 39; Eden Dep. Pg. 34; Whited Dep. Pgs. 77-78).

Services promptly took action once it learned of Whited's inappropriate conduct. Human Resources first learned of Plaintiff's allegations against Whited on August 16, 2016, when he was interviewed by Henley. (Dep. Ex. 27; Bell Decl. ¶5). By August 30, 2016 Whited was terminated. (Bell Decl. ¶4; Bell Dep. Pg. 25, 28-29; Whited Dep. Pg. 6). WestRock Services clearly exercised reasonable care to prevent Whited's inappropriate conduct and acted quickly to correct/prevent any further alleged harassment. See *EEOC v. AutoZone, Inc.*, 692 Fed. Appx. 280, 284-85 (6th Cir. 2017) (employer exercised reasonable care to prevent and correct sexual harassment since it had promulgated and distributed to employees its anti-harassment policy and reporting procedures, and employer did in fact terminate alleged harasser once it learned of the harassment). No question of material fact exists. WestRock Services exercised reasonable care to prevent and correct promptly any sexually harassing behavior of Plaintiff.

> b. Plaintiff Unreasonably Failed to Take Advantage of the Preventive and Corrective Opportunities.

Further, the record is clear that Plaintiff unreasonably failed to take advantage of WestRock Services' preventive measures to avoid harm.[31] Plaintiff knew the Company had a Compliance Hotline through which he could make a report via telephone, letter or email. (Dep. Exs. 3, 4, 5; Pl. Dep. Pgs. 53, 57-58; Bryant Dep. Pg. 44). He knew the report could be made anonymously. (*Id.*). Even so, he failed to make a report to anyone with authority over Whited for eight years. It is incredulous of Plaintiff to lay blame on the Company for failing to take action sooner when he failed to pick up the phone, write a letter or draft an email to the corporate office for eight years.

---

[31] Plaintiff testified that Whited began sexually harassing him eight or nine years ago but he first told Human Resources management about Whited's misconduct on August 16, 2016. (Pl. Dep. Pgs. 68-69, 86-87, 94, 160).

The law presents "employees who are victims of harassment with a hard choice: assist in the prevention of harassment by promptly reporting it to the employer, or lose the opportunity to successfully prosecute a Title VII claim based on the harassment." *Baldwin v. BlueCross/Blue Shield of Alabama*, 480 F.3d 1287, 1307 (11th Cir. 2007)(citing *Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d 27, 35 (1st Cir. 2003)). In this matter, Plaintiff never made a report to corporate Human Resources or used the Compliance hotline to report Whited. (Pl. Dep. Pg. 84; Bryant Dep. Pgs. 44-46). Plaintiff did not report Whited's alleged harassment to anyone outside the Gallatin facility or to anyone with authority over Whited for eight years. (Pl. Dep. Pgs. 84, 98, 101-103, 107-108, 111, 116, 119-121, 123, 127-130, 134-136, 138, 140-142, 157; Bryant Dep. Pgs. 44-46). In light of Plaintiff's failure, he should not be allowed to prosecute a claim of harassment against WestRock Services. Indeed, the Sixth Circuit has held "an employee unreasonably fails to take advantage of corrective opportunities when she waits two months to report harassment." *See EEOC v. AutoZone, Inc.*, 692 Fed.App'x. at 286 (citing *Thornton v. Federal Express Corp.*, 530 F.3d 451, 457 (6th Cir. 2008). Plaintiff's eight year delay in reporting Whited's misconduct to corporate management's attention clearly constitutes an unreasonable failure to take advantage of WestRock Services' policies and procedures. *Id.* at 286.

Of course, Plaintiff asserts that he told Eden that Whited had hit him in the groin. Notably, Plaintiff did not tell Eden he viewed this conduct as sexual harassment or that he was making a report of sexual harassment and as a result, Eden did not think he was making a complaint. (Eden Dep. Pgs. 14-19, 23-26, 49, 51, 53). Even if he had, Plaintiff unreasonably failed to utilize WestRock Services' policy to avoid harm by failing to contact corporate Human Resources or make a report through the Compliance Hotline when the conduct continued. In *Gallagher v. C.H.*

28

*Robinson Worldwide, Inc.*, the plaintiff alleged her employer was vicariously liable for her supervisor's sexually harassing conduct despite failing to utilize the employer's anonymous employee hotline to make a report of harassment. 567 F.3d 263 (6th Cir. 2009). The employer raised the *Ellerth/Faragher* defense in response. *Id.* at 275. The employer's harassment policy provided alternative avenues for reporting harassment, including an anonymous employee hotline. *Id.* at 276. Gallagher reported the alleged harassment to her supervisor to no avail. *Id.* at 267-68. Despite her knowledge of the employer's alternative reporting procedures, Gallagher did not utilize them to report the harassment further. *Id.* at 276. Gallagher argued that she tried to take advantage of the employer's policy by complaining to her supervisor. *Id.* The Sixth Circuit explained that Gallagher acted unreasonably by employing only one of the available remedies at her disposal to stop her supervisor's misconduct.[32] *Id.* at 276.

Specifically, the Sixth Circuit noted "[plaintiff's] failure to take reasonable steps to ensure her employer was <u>actually aware</u> of the harassment and had a chance to correct it before she left undercuts her present efforts to impose liability on [defendant employer] . . ." (emphasis added) *Id.* As in *Gallagher*, Plaintiff unreasonably failed to take advantage of alternative methods of reporting alleged harassment, including failing to utilize the Compliance Hotline or notify corporate Human Resources. WestRock Services cannot be held liable to Plaintiff for Whited's misconduct when Plaintiff himself failed to take steps to ensure WestRock Services was actually aware of Whited's misconduct.

---

[32] To be clear, the plaintiff in *Gallagher* claimed she was sexually harassed by her coworkers *and* her supervisor. The Court reversed summary judgment in favor of defendant employer because a question of material fact existed as to whether employer was liable for coworker harassment. The Court clarified however that employer was not liable for supervisor harassment, and if the case were solely based on supervisor harassment, it would have affirmed summary judgment in favor of employer. *Gallagher*, 567 F.3d at 275-76.

29

Moreover, any claim by Plaintiff that he was afraid to make an external report does not absolve his responsibility to report through the Compliance Hotline or to corporate Human Resources. Plaintiff will certainly allege he was afraid Whited would terminate him if he made such a report. However, the Company has policies and practices in place to protect against retaliation. First, the Compliance Hotline calls are not fielded or investigated by anyone at the local level. (McGraw Decl. ¶ 12-13; Bell Decl. ¶ 6). They are handled by the corporate Legal Department with assistance from corporate Human Resources. (*Id.*). Second, Plaintiff could have made a report anonymously. (See Dep. Ex. 4, 5; Pl. Dep. Pgs. 53, 57-59; Henley Dep. Pgs. 44, 126). Third, any fear Plaintiff may have had was based upon his own speculation as to what might happen rather than any evidence that anyone who had made a report about Whited had been terminated. There is no evidence in the record to suggest Whited ever terminated anyone who made a report. Even if he had tried, all terminations are reviewed by Human Resources, which acts as an additional protection to any employee who has made a report. (McGraw Decl. ¶ 9).

The Sixth Circuit has stated "[a]n employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment." *Gallagher,* 567 F.3d at 276 (quoting *Thornton v. Federal Express Corp.*, 530 F.3d 451, 457 (6th Cir. 2008)).[33] Thus, any fear or reluctance on the part of Plaintiff to complain to Human Resources or to file an anonymous Compliance Hotline complaint for eight years was unreasonable. See *Deters v. Rock-Tenn Co., Inc.*, 245 Fed. App'x.

---

[33] See also *Verges v. Shelby County Sheriff's Office*, 721 F.Supp.2d 730 (W.D. Tenn. 2010) (employee unreasonably failed to take advantage of employer's preventive or corrective opportunities where employer had written anti-harassment policy in place during relevant time period and employee's proposed excuse for not reporting alleged sexual harassment, that she feared retaliation, was unjustified and did not excuse her from complying with the reporting policy).

30

516 (6th Cir. 2007) (plaintiff acted unreasonably in waiting three years to complain to her employer about plant manager's ongoing sexual harassment. Until a complaint was made by a different employee to the company's headquarters, company had no knowledge of the plant manager's misconduct. The Sixth Circuit explained "[plaintiff's] three-year failure to complain was *unreasonable*-rendering her unwittingly complicit in [plant manager's] ongoing harassment, and depriving [the company] of the wherewithal to earlier take appropriate corrective action, for her sake and for the sake of the company's other employees.")(Emphasis original).

Plaintiff's failure to lodge a complaint to WestRock Services through the Compliance Hotline or to anyone outside the Gallatin facility with authority over Whited was unreasonable and prevented WestRock Services from taking action to stop any inappropriate conduct at an early stage. Of course once it finally had notice, WestRock Services promptly terminated Whited. (Bell Decl. ¶ 4; Bell Dep. Pgs. 25, 28-29; Whited Dep. Pg. 6). The fact Whited was terminated and Plaintiff remains employed establishes any alleged fear Plaintiff had of reporting Whited was unreasonable. See *Collette v. Stein-Mart, Inc.*, 126 Fed.App'x. 678, 686 (6th Cir. 2005) (employer defeated vicarious liability under Title VII for any harassment by establishing that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided; employer had policies explicitly prohibiting workplace sexual harassment and initiated an investigation as soon as the employee relayed her complaint and terminated the supervisor).[34]

---

[34] See also, *Giles v. Hometown Folks, LLC*, 61 F.Supp.3d 749 (E.D. Tenn. 2014)(employee failed to avail herself of employer's anti-harassment policies until she finally reported her supervisor for creating a sexually hostile work environment by touching her inappropriately, and thus employer was entitled to affirmative defense. Employer was unaware that supervisor was making inappropriate comments until notified by female employee, and terminated supervisor the day after employee informed employer of the inappropriate touching).

31

Despite his ability to make an anonymous report to the corporate office, Plaintiff failed to do so for eight years.  He cannot now place blame his failure upon WestRock Services.  WestRock Services clearly had policies and procedures in place to prevent and correct harassment and Plaintiff clearly failed to take advantage of those policies and procedures by failing to make a report to anyone in management above Whited. There is no genuine issue of material fact. The *Ellerth/Faragher* affirmative defense applies and Plaintiff's same-sex harassment claim should be dismissed.

## IV.    CONCLUSION

For those reasons, WestRock Services' Motion for Summary Judgment should be granted and Plaintiff's Complaint should be dismissed in its entirety with prejudice.


Date: January 26 ,2018                                   Respectfully submitted,


                                                    */s/ Mary Dohner Smith*
                                                    Mary Dohner Smith, TN Bar No. 021451
                                                    mdohner@constangy.com
                                                    Mallory Schneider Ricci, TN Bar No. 032492
                                                    mricci@constangy.com
                                                    **CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
                                                    401 Commerce Street, Ste. 1010
                                                    Nashville, TN 37219
                                                    (615) 320-5200
                                                    (615) 321-5891 (facsimile)

                                                    *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **DEFENDANT'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT** has been furnished to the below individual(s) via the Court's electronic filing system and/or by depositing same in the United States Mail, postage prepaid, on January 26, 2018.

Heather M. Collins
heather@collinshunter.com
Anne Hunter
anne@collinshunter.com
COLLINS & HUNTER PLLC
7000 Executive Center Drive
Building Two, Ste. 320
Brentwood, TN 37027
(615) 724-1996

*Counsel for Plaintiff*

*/s/ Mary Dohner Smith*
Mary Dohner Smith

33