IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL KULAKOWSKI, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WESTROCK SERVICES, INC., ) <br> ) <br> Defendant. ) <br> ) | Case Number: 3:16-CV-02510 <br><br> Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair Newbern |

## DECLARATION OF JAMES "JEB" BELL, JR.

1. My name is James "Jeb" Bell, Jr. I am over 18 years of age and the information contained in this declaration is from my own personal knowledge.

2. I have been employed by WestRock Services, Inc. ("WestRock") and its legacy companies since 1997. I am currently employed as an Area Vice President of the Midsouth covering eleven facilities in Mississippi, Alabama and Tennessee. Local operations management at these eleven facilities report up the chain of command to me. This includes local management at the Gallatin, Tennessee facilities. Prior to August 30, 2016, William "Tommy" Whited ("Tommy") was the General Manager of the Gallatin, Tennessee facilities.

3. Tommy reported directly to a Business Unit General Manager, Tom Pedine, who reports to me. I report directly to Rick Parris, Senior Vice President Central Region, who reports to Jeff Chalovich, President of Corrugated Packaging. Tommy had a management team at the Gallatin facilities that reported to him. Mike White was the Facility Manager at the fulfillment plan, Keith Hall was a Customer Service Manager, Larry Eden was the Plant Manager and Gary Pagels was a Plant Supervisor at the Sheet Plant.

1

4. I notified Tommy on August 30, 2016, that his employment with WestRock was terminated, effective immediately. I was also involved in the decision to terminate Tommy. Tommy was terminated following an investigation, during which it was learned that he had engaged in inappropriate conduct in the workplace.

5. In August 2016, WestRock received an anonymous report related to the Gallatin facility. According to the report, employees were leaving due to the environment and the reporter urged the company to look into it.

6. WestRock maintains a Compliance Hotline for employees to utilize to make reports to the corporate office. The initial report goes to a third party vendor, who then communicates the report to the corporate Legal Department. The Legal Department coordinates the review and investigation of any such reports with assistance from the Human Resources Department if the report relates to employment matters. Typically, operations management is not involved in conducting any investigations into these reports. Legal and/or Human Resources will advise me when a report pertaining to one of my facilities is received and the general nature of the report. I am not, however, involved in the actual investigation of the report. During the investigation, I am updated regarding information obtained. Upon completion of the investigation, I am typically involved in assessing/determining what action, if any is warranted.

7. The Human Resources Department at WestRock has its own managerial reporting structure/hierarchy. The individuals responsible for the Human Resources function at my facilities do not report to anyone in local facility/operations management. They likewise do not report directly to me. There is a "dotted line" relationship, meaning the Human Resources employees assigned to my facilities are supposed to keep me informed of important events but do not necessarily report to me as subordinates.

8. WestRock does not have a full-time onsite Human Resources representative in Gallatin, Tennessee due to the limited number of employees there. Rather, there is an Area Human Resources Manager, Terri Henley ("Terri"), who covers four facilities in Tennessee. Prior to December 2016, Terri reported to Melinda McGraw ("Melinda"), who was her direct manager in the Human Resource Department hierarchy. Terri and Melinda assisted the Legal Department in conducting the investigation into the August 2016 report. I was supplied with updates regarding the information obtained during the investigation.

9. During the investigation, some very concerning allegations were made by Michael Kulakowski ("Michael"), an employee who works at the Gallatin fulfilment plant. During the investigation, Michael reported to Terri that he had been hit and/or kicked in the groin by Tommy on more than one occasion. Michael's allegations were corroborated by at least one other employee. Tommy denied hitting or kicking Michael when he was interviewed. Even so, we made the decision to terminate his employment. The decision was collaborative. Myself, Rick Parris ("Rick") (Senior Vice President), and Jeff Chalovich ("Jeff") (President Packaging) participated in a conference call with Melinda and Joy Jones ("Joy") (Human Resources Director of the Central Division). During our call, Rick made clear his opinion that Tommy needed to be terminated and the rest of us agreed.

10. Tommy was terminated because of his inappropriate conduct in the workplace. As a General Manager, it was unacceptable for Tommy to hit or kick an employee in the groin or anywhere else. WestRock has an established Code of Conduct, anti-violence and anti-harassment policies. At a minimum, Tommy's act of hitting and kicking an employee violated the Code of Conduct, which prohibited horseplay. Prior to August 2016, I had no reason to suspect Tommy had acted in this way. There had never been any reports to corporate management directly or

through the Compliance hotline indicating Tommy had hit or kicked employees. During my visits to the Gallatin, Tennessee facility and interactions with Tommy outside of the Gallatin, Tennessee facility, I never witnessed Tommy do or say anything that would lead me to believe there was anything like this taking place at the Gallatin, Tennessee facility.

11. I understand Michael has filed a lawsuit against WestRock claiming assault and battery and sexual harassment. Michael's allegations regarding Tommy's conduct in the workplace exceed what he reported during the investigation conducted in August 2016. I also understand that Tommy has denied Michael's allegations. The conduct Michael alleges Tommy engaged in prior to his termination were in no way expected by or authorized by WestRock. These allegations include: 1) Tommy hitting Michael in the groin; 2) Tommy kicking Michael in the groin; 3) Tommy grabbing/squeezing Michael in the groin; 4) Tommy hitting Michael with a broom; 5) Tommy hitting Michael or pretending to hit Michael with his truck; 6) Tommy hitting/kicking Michael in parts of his body other than his groin; 7) Tommy throwing Michael over a desk; 8) Tommy exposing his penis and/or unzipping his pants and saying "suck my dick;" 9) Tommy calling Michael names including "pussy," "son of a bitch," "dumb mother fucker," and "stupid Pollock;" and 10) Tommy telling Michael to stay late so that he could go "fuck" Michael's wife.

12. These allegations are disturbing. Tommy was not employed by WestRock to engage in this type of conduct. In fact, this conduct violates WestRock's policies and core values. If Tommy engaged in these acts, he was not doing so to serve WestRock in any way. As the General Manager, Tommy would not be expected to engage in this type of conduct and would not have been authorized to do so. Rather, he (along with all other employees) was prohibited from engaging in this type of conduct as evidenced by WestRock's Code of Conduct, anti-violence policy and anti- harassment policy.

4

4997280v.1
Case 3:16-cv-02510    Document 32-1    Filed 01/26/18    Page 4 of 5 PageID #: 136

13.     No one has promised me anything or coerced me in any way to make this declaration. No one has put any pressure on me to say or not say anything whatsoever.

14.     In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed this 25 day of January, 2018

_____
James "Jeb" Bell, Jr.

5