# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

MICHAEL KULAKOWSKI,  )
      )
     Plaintiff,  )
      )   **Case Number: 3:16-CV-02510**
vs.  )
      )   **Judge Waverly D. Crenshaw, Jr.**
WESTROCK SERVICES, INC.,  )   **Magistrate Judge Alistair Newbern**
      )
     Defendant.  )
      )

## DECLARATION OF TERRI HENLEY

1.     My name is Terri Henley. I am over 18 years of age and the information contained in this declaration is from my own personal knowledge.

2.     I have been employed by WestRock Services, Inc. ("WestRock") and its legacy companies since 2012. I am currently employed as a Business Unit Human Resources Manager and have been since November of 2014. Until December 2016, I reported directly to Melinda McGraw, Area Human Resources Manager.

3.     The Human Resources Department at WestRock has its own managerial reporting structure. As Human Resources, our direct management hierarchy is within the Human Resources Department. I do not report directly to individuals in facility management.

4.     The Gallatin facilities do not have a full-time on-site Human Resources Representative. Helen Kendall ("Helen") was employed as an Administrative Assistant at the Gallatin sheet plant. She was not a member of the Human Resources Department and did not have a reporting relationship in the Human Resources Department. Rather, she reported directly to local management at the Gallatin facility. Helen did, however, assist with distributing and collecting employment related paperwork. She would also provide employees with telephone

1

numbers/contact information when they had questions regarding things like insurance. She was not a supervisor or member of management.

5.      In my current role, I am the assigned Human Resources Representative for facilities employing WestRock employees in Chattanooga, Gallatin, Lewisburg, and Murfreesboro. In this role, I have been involved in the investigation of allegations concerning violence, harassment, and violations of WestRock's Code of Conduct. WestRock has an established Code of Conduct, anti-violence and anti-harassment policies. These policies were included in the Employee Handbook, which was distributed to employees at the Gallatin facilities.

6.      Information regarding WestRock's Compliance Hotline is included in the Employee Handbook. The Compliance Hotline provides employees with four ways to make reports. They can do so by calling a toll-free number, writing a letter to the corporate office, via the intranet or via the internet. The Compliance Hotline information is also posted at the Gallatin facility. It has been posted for years on the employee bulletin board in the Gallatin facility. Employee reports to the Compliance Hotline can be made anonymously. Additionally, retaliation for making a report is prohibited. All significant employment decisions (i.e. corrective actions, demotions, terminations, etc.) related to anyone who makes a report are reviewed by Human Resources and/or corporate operations management as a safe guard against retaliation.

7.      Reports made using the Compliance Hotline first go to a third party vendor, who then communicates the report to WestRock's Legal Department. The Legal Department coordinates the review and investigation of any such reports. Members of the Human Resources Department, like myself, are asked to assist with investigations and many times conduct witness interviews.

2

8. Although I am based out of Lewisburg, Tennessee, I travel to each of my four assigned facilities approximately one full day every month, and have done so since becoming Business Unit HR Manager. When I visit the facilities I walk the plant floor, participate in meetings, assist employees with any issues they may have, and meet with the management team.

9. While visiting, I set up shop in a vacant office or in a conference room in order to work. While visiting within the different plants I address any issues, comments, or concerns that employees bring to my attention. Employees can bring their concerns to me in-person. Employees can also report concerns or make complaints anonymously via WestRock's Compliance Hotline.

10. On or about August 8, 2016, WestRock received an anonymous report that had been submitted via WestRock's "Speak Up!" reporting system. The "Speak Up!" system is one of many different avenues employees can use to report their concerns or make a complaint. Reports using the "Speak Up!" system can be made anonymously.

11. On or about August 8, 2016, the report was forwarded to me and I was asked to assist with the investigation of the report. The report did not contain a lot of detail. The anonymous reporter indicated that employees were leaving because of the General Manager (at the time Tommy Whited) and that he created a hostile work environment. We had just had two employees, one male and one female, resign. The report recommended that WestRock interview employees to find out why people are leaving.

12. I began my investigation by calling Johanna Crowder ("Johanna"), an employee that had recently given WestRock a notice of resignation. She did not want to talk on the phone, but claimed she was leaving to escape a toxic environment, and to pursue a better job opportunity. She told me she was not the only person I needed to speak with, so I made plans to travel to the Gallatin facility and conduct in-person interviews.

3

13.     On Friday, August 12, 2016 I traveled to Gallatin and interviewed Johanna in-person. She again told me she was not happy with her work environment, and that she was leaving for another job opportunity. During the interview, she told me I should speak with Helen Kendall while I was there. Helen told me an employee was being paid even though he was not at work. She also alleged that Tommy Whited ("Tommy") was having an affair with Susan Hart ("Susan"), a female subordinate employee.

14.     I reported this information to the legal department and up my management chain, and continued interviewing employees. I returned to the Gallatin facility on August 15, 2016 to interview additional employees. During this set of interviews, more allegations surfaced that suggested Tommy was having an inappropriate relationship with Susan. One employee, Lana Potts, provided me with a written statement claiming she witnessed Tommy and Susan "kiss lip to lip." At this point, my investigation was focused on whether Tommy was having an inappropriate relationship with a female subordinate employee, and whether he was falsifying records.

15.     On or about August 15, 2016, as I continued interviewing employees, more allegations pertaining to Tommy surfaced. Jerry Harville ("Jerry") stated Tommy had hit him, and claimed that he had witnessed Tommy hit Michael Kulakowski ("Michael"). Some of the employees I interviewed on August 15 recommended that I contact Michael.

16.     On or about August 16, 2016, I called Michael on his cellphone to interview him. At the time, he was away from work on vacation. Michael was hesitant during our phone call and it took some prodding on my part to get him to talk about Tommy and what he had witnessed or heard. During the call, Michael told me that Tommy had hit and kicked him in the groin on several occasions.

4

17.     Tommy was the General Manager of the Gallatin facility and in his role he would have been expected to abide by WestRock's various employment policies. Hitting and kicking an employee in the groin is a violation of those policies. WestRock in no way would expect or authorize a General Manager to act in that manner.

18.     Concerned about what Michael had told me over the phone on August 16, I setup a face-to-face interview with him to take place on August 17, 2016 at the fulfillment center. During the in-person interview, Michael told me that Tommy had mistreated him for several years, and indicated Tommy had kicked a chair out from under him, hit him with a broom, called him names including "stupid son of a bitch," and hit/kicked him in the groin on several occasions. I reported Michael's allegations to the legal department, up my management chain, and to Whited's superiors.

19.     On August 26, 2016 Tom Pedine, Melinda McGraw, and I again interviewed Michael in-person. During this interview, Michael made several allegations against Tommy, including allegations that Tommy threw his helmet at him, threatened to fire him, called him names, kicked him, and made him get on a tow motor even though his back hurt.

20.     On August 26, 2016, Tom Pedine, Melinda McGraw, and I interviewed Tommy concerning various allegations of inappropriate behavior that had been made against him. Tommy was terminated on August 30, 2016 due to his inappropriate conduct in the workplace in violation of WestRock's Code of Conduct and policies.

21.     Prior to my investigation into the August 8, 2016 anonymous report, there had not been any reports from employees or comments on employee surveys that would have given me any notice that Tommy was hitting or kicking male employees in the groin or harassing male employees in any way. Michael never made a report to me that he was hit or kicked prior to my

5

phone interview with him in connection with the August 8, 2016 anonymous report. He did not make any report to corporate Human Resources. If he had, WestRock would have investigated and taken the appropriate action to help him.

22.     No one has promised me anything or coerced me in any way to make this declaration. No one has put any pressure on me to say or not say anything whatsoever.

23.     In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed this 24 day of January, 2018

Terri Henley