IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL KULAKOWSKI, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WESTROCK SERVICES, INC., )<br>)<br>Defendant. )<br>) | Case Number: 3:16-CV-02510<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair Newbern |

## DECLARATION OF MELINDA MCGRAW

1. My name is Melinda McGraw. I am over 18 years of age and the information contained in this declaration is from my own personal knowledge.

2. I was employed by WestRock Services, Inc. ("WestRock") and its predecessors from May 2007 until December 2016. My last role with the company was Area Human Resources Manager serving nine facilities including the Gallatin, Tennessee facilities. I reported directly to the Human Resources Director of the Central Division, Joy Jones ("Joy"). Terri Henley ("Terri"), the Area Human Resources Manager, reported to me.

3. The Human Resources Department at WestRock has its own managerial reporting structure. As Human Resources, our direct management hierarchy was in the Human Resources Department. We did not have direct reporting with individual facility management.

4. The Gallatin facility did not have a full-time on-site Human Resources Representative. We did not employ enough individuals at the Gallatin facility to justify a full-time on-site Human Resources Representative. The Gallatin facility is comprised of two plants, the sheet plant and the fulfilment center. The sheet plant had less than 30 employees and the fulfilment center had less than 15 employees. There was a large contingency of temporary employees at the

1

Gallatin facility. The temporary staffing agency had an on-site manager responsible for handling human resources and other issues for the temporary employees.

5. Terri was the first line Human Resources Representative for the Gallatin facility. Terri was responsible for four facilities and her main office was in Lewisburg, Tennessee. She spent her time between the four facilities.

6. Helen Kendall ("Helen") was employed as an Administrative Assistant at the Gallatin sheet plant. She was not a member of the Human Resources Department and did not have a reporting relationship in the Human Resources Department. Rather, she reported directly to local management at the Gallatin facility. Helen did, however, assist Terri and me with the dissemination and collection of paperwork. She would also provide employees with telephone numbers/contact information when they had questions regarding things like insurance. She was not a supervisor or member of management.

7. In my role, I was involved in investigating and responding to any allegations concerning violence, harassment, and violations of the Code of Conduct.

8. WestRock has an established Code of Conduct, anti-violence and anti-harassment policies. These policies were included in the Employee Handbook. The Employee Handbook was distributed to all employees. Employees at the Gallatin facility were issued the Employee Handbook in 2011 and 2013. Each employee was given their own copy of the Employee Handbook.

9. Information regarding WestRock's Compliance Hotline was also included in the Employee Handbook. The Compliance Hotline provided employees with four ways to make reports. They could do so by calling a toll-free number, writing a letter to the corporate office, via the intranet or via the internet. The Compliance Hotline information was also posted at the Gallatin

2

facility. It had been posted on the employee bulletin board at the Gallatin facility for years prior to my leaving the company in December 2016. Employee reports to the Compliance Hotline can be made anonymously. Additionally, retaliation for making a report is prohibited. All significant employment decisions (i.e. corrective actions, demotions, terminations, etc) related to anyone who makes a report are reviewed by Human Resources and/or corporate operations management as a safe guard against retaliation.

10. In addition, in 2015, WestRock Services installed kiosks at its facilities. Through the kiosks, employees could access company policies, company directories, and obtain information. They could also utilize the kiosks to make reports. Training was provided to the employees when the kiosks were installed.

11. In 2015, WestRock Services also redistributed the Code of Conduct, including the Compliance Hotline, to employees at the Gallatin facility.

12. Any reports made via the Compliance Hotline went to a third party vendor and were then communicated to WestRock Services' legal department. The legal department would assess the reports and oversee any resulting investigations. The legal department would engage Human Resources to assist with investigations related to reports from employees related to violations of the Code of Conduct, anti-violence policy or anti-harassment policy. I would typically be contacted for assistance investigating any such reports pertaining to my nine facilities.

13. When investigating a report, we did not typically involve local management to preserve the integrity of the investigation. Local management may be informed that a report had been made and was being investigated but very little, if any details would be provided. Information obtained during the investigation would typically be provided to the corporate operational management team.

3

14. In October 2013, the company received an anonymous complaint pertaining to Tommy Whited ("Tommy"), the General Manager of the Gallatin facility. (Exhibit A). I was contacted about the report by the legal department. An anonymous individual reported that Tommy had engaged in an inappropriate relationship/conduct with a female employee (not the reporter) in 1999, fourteen years prior. This was the first and only report received indicating that Tommy had engaged in any sort of inappropriate relationship/conduct with respect to female employee or any other employee for that matter. Following this report, we did not receive any others regarding Tommy until August 2016.

15. In August 2016, the company received an anonymous report pertaining to Tommy. The anonymous reporter indicated that employees were leaving because of Tommy and that he created a hostile work environment. We had just had two employees, one male and one female, resign. Terri and I were asked to assist the legal department with an investigation. Terri conducted the initial employee interviews.

16. The investigation into a couple employees resigning turned into a large scale investigation of other issues including allegations that Tommy had engaged in inappropriate conduct in the workplace. Specifically, during interviews it was reported that Tommy had hit and/or kicked employees in the groin. One employee, Michael Kulakowski ("Michael"), reported that he had been hit/kicked by Tommy several times. These allegations were communicated to the legal department, my superiors in the Human Resources Department and Tommy's superiors.

17. Michael's report was corroborated by other witnesses, who reported they had seen Tommy hit Michael in the groin. Tommy was interviewed and denied hitting or kicking Michael. Despite his denial, Tommy's employment was terminated.

18. Tommy was the General Manager of the Gallatin facility and in his role he would have been expected to abide by WestRock's various employment policies. Hitting and kicking an employee in the groin is a violation of those policies. WestRock in no way would expect or authorize a General Manager to act in that manner. It was unacceptable behavior.

19. The decision to terminate Tommy was collaborative. Several individuals in Tommy's managerial hierarchy including Jeb Bell (Area Vice President), Rick Parris ("Rick") (Senior Vice President), and Jeff Chalovich (President Packaging) participated in a conference call with myself, Joy Jones and the legal department. During our call, Rick stated that Tommy had to be terminated and everyone else agreed.

20. Tommy was terminated because of his inappropriate conduct in the workplace in violation of WestRock's Code of Conduct and policies.

21. Tommy was notified of his termination on August 30, 2016. Jeb led the meeting and told him that he was terminated as a result of the investigation. Tommy was offered the opportunity to resign in lieu of termination due to his extremely long tenure with the company but he declined to do so. Thus, his termination was designated as an involuntary termination.

22. Prior to the investigation in August 2016, there were no reports from employees or comments on employee surveys that would have given us any notice that Tommy was hitting or kicking a male employee in the groin or harassing male employees in any way. Michael never made any report to me or Terri that he was being hit or kicked prior to being interviewed in connection with the August 2016 anonymous report. He did not make any report to corporate Human Resources. He did not make any report through the Compliance Hotline. If he had, WestRock would have investigated and taken the appropriate action to help him.

23. No one has promised me anything or coerced me in any way to make this declaration. No one has put any pressure on me to say or not say anything whatsoever.

24. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed this 25 day of January, 2018

_____
Melinda McGraw

4992290v.1

# CASE DETAILS
## WSTV-13-10-0048

**CONFIDENTIAL MEMORANDUM**

| | | | |
|---|---|---|---|
| **Report Initiated** | 2013-10-31 13:43 ET | **Primary Priority** | B |
| **Scheduled Follow-up** | 2013-11-07 | | |
| **Source** | Hotline | **Current Status** | New |
| **Awareness Resource** | Unknown | **Case Opened** | |
| **Language** | English | **Case Closed** | |
| **Documented by** | MURPHYC | **Days Open** | N/A |

| Allegation | Class | Priority | Primary |
|---|---|---|---|
| Harassment - Sexual | Diversity, Equal Opportunity and Respect in the Workplace | B | Yes |
| Inappropriate Behavior | Employee Relations | C | No |

| Location | Location Geography | Location Function |
|---|---|---|
| Location Provided by Caller<br>1211 Hartsville Pike<br>Gallatin, TN 37066 | | |

| Parties Involved | Party Type | Job Title | Description |
|---|---|---|---|
| Anonymous Caller | Caller | | |
| Tommy Whited | Subject | (job title unknown) | Tommy "runs the place" |
| (first name withheld) (last name withheld) | Other Involved Party | customer service representative | |

**Issue Summary**

Tommy Whited sexually harassed a Customer Service Representative (name withheld).

**Issue Details**

What is your involvement in the issue? - N/A
Is this an ongoing issue? - Yes
What is the date of the most recent occurrence? - 1999 (exact month unknown)
Have you reported this issue to anyone within the organization? - No
Do you believe that anyone has taken steps to hide this issue? - N/A
Where did the issue occur? - Onsite
What is your relationship to the company? - Other

Tommy Whited sexually harassed a Customer Service Representative (name withheld), and the Customer Service Representative is married.  Tommy gave the Customer Service Representative compliments.  On one occasion, Tommy turned the Customer Service Representative's head and kissed her.  Tommy also stuck his head in the Customer Service Representative's car on another occasion and kissed her.  In an office, Tommy took out his penis and asked the Customer Service Representative to touch it.  Additionally, Tommy called the Customer Service Representative into the office.  Tommy gave the Customer Service Representative a toy penis.  Tommy told the Customer Service Representative to take the toy home and use it.  On the last occasion, Tommy tried to touch the Customer Service Representative's breasts.  The Customer Service Representative slapped Tommy's hand.  This was the end of the harassment.

**NAVEX Global Comments**

N/A

| Additional Questions | Answers |
|---|---|
| No Questions and Answers found for this call report. | |

**Report Notes**

| Date Added | Added By |
|---|---|
| 2015-08-27 21:47 ET | dbo |

**Note #1**

RTC-13-10-0031

**Communication with Reporter**

| Type | Date Entered | Entered By | Reply Given to Reporter | Language |
|---|---|---|---|---|
| Follow-up | 2013-11-13 08:27 ET | webAllegationSubmit | No | English |

WPA Follow-Up

I (husband) didn't find this out until approximately "4" months ago.  If your answer & solution to this problem is a 'time period', then there's nothing we can do.  But remember this - it happened - and at least you know, and others will know, what kind of management leaders Rock-Tenn employs.  Word-of-mouth gets around.  This is sexual harassment & if I (husband) would've known back then - I would have filed charges!  Good - bye.  As far as we're concerned - this is over.

| Reply | 2013-11-12 10:18 ET | Sandra  Garrison | Yes | English |
|---|---|---|---|---|

Final

We cannot appropriately investigate an incident that occurred 14 years ago.  If there have been any recent instances of harassment, please identify those so we can conduct a proper investigation.

| Follow-up | 2013-11-11 19:24 ET | webAllegationSubmit | No | English |
|---|---|---|---|---|

WPA Follow-Up

The last occurrence of harassment occurred in 1999 as stated in the initial report.

Case 3:16-cv-02510   Document 32-7   Filed 01/26/18   Page 8 of 10 PageID #: 164

EXHIBIT A

| | | | | | |
|---|---|---|---|---|---|
| Follow-up | 2013-11-07 08:26 ET | webAllegationSubmit | No | | English |

WPA Follow-Up

Yes.  The last occurrence of harassment occurred in 1999 at stated in the report.

| | | | | | |
|---|---|---|---|---|---|
| Follow-up | 2013-11-07 07:05 ET | webAllegationSubmit | No | | English |

WPA Follow-Up

The user has not provided any additional details for this report.

| | | | | | |
|---|---|---|---|---|---|
| Reply | 2013-11-01 13:13 ET | Sandra  Garrison | Yes | | English |

Additional Information Requested

Please confirm whether the last occurrence of harassment occurred in 1999, as the report states.  If there have been more recent instances of harassment, please identify what occurred and the timeframe of when it occurred.

---

| Assignee | Assignment Type | Complete/Removed | Date Assigned | Assigner |
|---|---|---|---|---|

No Assignment found for this call report.

---

| Assignment Notes | | Date Entered | Entered By |
|---|---|---|---|

No Case Assignment Notes found for this call report.

---

**Investigation Notes**

| Date Entered | | Entered By | |
|---|---|---|---|

No Case Investigation Notes found for this call report.

**Resolution Details**

No Resolution found for this call report.

---

**Attachments**

| File Name | Date Added | Uploaded By |
|---|---|---|

No Case Upload Files found for this call report.

---

**Distribution**

| Name | Job Title |
|---|---|
| Erica Archer | |
| Kathryn Dailey | |
| Lindsay Wilson | |
| Sandra Garrison* | Paralegal |
| Stacey Moulton* | Sr. Employment Counsel |
| Yvonne Kot | Litigation Specialist |

*Client agrees and understands that NAVEX Global neither warrants, vouches for, nor authenticates the reliability of the allegations provided in this report. Client agrees that it shall have the sole responsibility for investigating or otherwise evaluating these allegations and other information provided and to comply with all local, state and federal laws pertaining to the investigation and protection of such information, as well as the protection of all rights of any person or persons accused of any wrongdoing.